## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| Ronald Reed, Jr., | **Case No.:** 2:24-cv-12931 |
| Plaintiff, | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Transunion, LLC, Equifax Information Services, LLC, Extra Credit Union, | 1. FCRA, 15 U.S.C. § 1681 *et seq.* |
| Defendants. | |

Plaintiff Ronald Reed, Jr ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*., against Defendant Transunion, LLC ("Transunion") Defendant Equifax Information Services, LLC ("Equifax") and Defendant Extra Credit Union ("Extra") (collectively, "Defendants").

## **INTRODUCTION**

1. Plaintiff's Complaint arises from violations of the FCRA by Defendants. Plaintiff contends that Transunion and Equifax failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff. Plaintiff also alleges that Defendants failed to conduct a proper reinvestigation after receiving a dispute from the Plaintiff. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file

disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, which is a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.     Venue in the Southern District of Michigan is proper pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District, Defendants regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

4.     Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

5.     Plaintiff is a natural person who resides in the city of Warren, County of Macomb, Michigan.

6.     Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7.     Defendant Transunion is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Transunion is regularly engaged in the

business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Transunion's registered agent is CSC-Lawyers Incorporating Service located at 3410 Belle Extra Way Ste 600, Lansing, MI 48911-4274

8.     Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's registered agent is CSC-Lawyers Incorporating Service located at 3410 Belle Extra Way Ste 600, Lansing, MI 48911-4274.

9.     Defendant Extra is a person who furnishes information to consumer reporting agencies under 15 U.S.C. § 1681s-2. Extra's principal place of business is located at 6611 Chicago Road, Warren, IL 48092. Extra conducts business in Michigan.

10.     During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Michigan and conducted business in the State of Michigan on a routine and systematic basis.

11.     Extra regularly engages in the business of lending money to consumers and regularly relies upon the credit reports created by credit reporting agencies.

12.     Credit reporting agencies regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of

furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. CRA's regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency" ("CRA") as defined by 15 U.S.C. § 1681a(f) of the FCRA.

13.     During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

14.     Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## **FACTUAL BACKGROUND**

### *The Role of Credit Reporting Agencies*

15.     Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

16.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

17.    Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

18.    The FCRA is intended to ensure CRAs exercise their weighty responsibilities with fairness, impartiality, and respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

19.    Transunion and Equifax are two of the three major consumer reporting agencies (at times referred to collectively as "the CRAs," and individually as a "CRA") in the United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports (i.e., credit reports).

20.    CRA's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

21.    Equifax and Transunion obtain consumer information from various sources. Some consumer information is sent directly to Equifax and Transunion, and other information must be independently gathered by Equifax and Transunion, or acquired from third party providers, vendors or repositories, such as computerized reporting services like PACER or Lexis-Nexis.

22.    Equifax and Transunion also obtain information from other CRAs, who commonly share information.

23.    Equifax and Transunion regularly seek out and procure consumer bankruptcy filing and discharge information on a daily basis, with the intention of including it in the consumer reports that Equifax and Transunion sell to third parties for a profit.

24.    The diligence Equifax and Transunion exercises in uncovering and recording consumer bankruptcy filings is not replicated in Equifax and Transunion's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

25.    Equifax and Transunion's unreasonable policies, procedures, and algorithms consistently fail to report consumer information accurately in their credit reports, as required by 15 U.S.C. § 1681e(b).

26.    Equifax and Transunion know the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished and reported information, and information contained in its own files.

27.     The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Equifax and Transunion) to make lending decisions.

28.     The information Equifax and Transunion include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

29.     FICO Scores are calculated using information contained in Equifax and Transunion's consumer reports.

30.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

31.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

> "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA indicates that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

32.    Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Equifax and Transunion in consumer reports.

33.    DTI compares the total amount a consumer owes to the total amount a consumer earns.

34.    Equifax and Transunion are well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts are discharged.

35.    However, Equifax and Transunion regularly report inaccurate information about consumers' debts after they receive a Discharge Order.

36.    Rather than follow reasonable procedures to assure maximum possible accuracy, as is required by the FCRA, Equifax and Transunion frequently report information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

37.    Equifax and Transunion regularly publish consumer information that conflicts with the information provided by data furnishers, included in Equifax and Transunion's credit files, contained in public records that Equifax and Transunion

regularly access, and/or sourced through Equifax and Transunion's independent and voluntary efforts.

38.     Such inaccuracies are made in violation of the FCRA at 15 U.S.C. § 1681e(b) and failing to conduct a reasonable reinvestigation after receiving a dispute from a consumer is a violation of the FCRA at 15 U.S.C. § 1681i(a).

39.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Equifax and Transunion for its inaccurate consumer reporting following a Chapter 7 Bankruptcy Discharge, including failure to accurately report which debts were discharged or not discharged.

40.     Therefore, Equifax and Transunion are on continued notice of its inadequate post-bankruptcy reporting procedures, which often produce inaccurate public record information, balances, and account and payment statuses.

*Plaintiff's Chapter 7 Bankruptcy*

41.     On or around January 31, 2023, Plaintiff filed for a Chapter 7 Bankruptcy in the United States Bankruptcy Court for the District of Michigan, petition no. 2:23-bk-40876.

42.     Plaintiff received an Order of Discharge for his bankruptcy on or about May 9, 2023.

<u>*The Inaccuracies on Equifax and Transunion's Consumer Report*</u>

43.     Sometime after the discharge of Plaintiff's Chapter 7 bankruptcy, Equifax and Transunion prepared a credit report for the Plaintiff and included inaccurate information in regard to Plaintiff's Extra Account.

44.     Plaintiff reviewed his Credit Report was created on or around November 2023, after Plaintiff's Chapter 7 Bankruptcy and after Plaintiff received an Order of Discharge.

45.     The name, social security number, and address in Plaintiff's Chapter 7 petition match the information listed on his Credit Report.

46.     Equifax and Transunion prepared one or more consumer reports concerning Plaintiff after Plaintiff received an Order of Discharge from his Chapter 7 Bankruptcy.

47.     However, Equifax and Transunion failed to accurately report the two Extra Accounts as it was opened after Plaintiff's Chapter 7 bankruptcy was already discharged, rather state that these accounts were included in the bankruptcy which is not true.

48.     If not patently inaccurate, Equifax and Transunion inaccurate reporting of Plaintiff's Extra account is materially misleading.

<u>*Failure to Investigate by the Defendants*</u>

49.     Upon information and belief, Equifax and Transunion prepared and issued credit reports concerning the Plaintiff that included inaccurate and misleading information relating to his Extra Account.

50.     Specifically, Equifax and Transunion reported the Extra Accounts as an account that was discharged in Plaintiff's Chapter 7 Bankruptcy when the Extra Accounts were in fact only opened after Plaintiff's bankruptcy was already discharged.

51.     Equifax and Transunion have been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown.

52.     On or around December 27, 2023, Plaintiff mailed a dispute letter to Equifax and Transunion to inform Equifax and Transunion that the Extra Accounts are being incorrectly reported by Equifax and Transunion as a debt that was discharged in bankruptcy.

53.     Pursuant to 15 U.S.C. § 1681i(a)(2)(A), a CRA "shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller."

54.     On or around February 1, 2024, Plaintiff received a form response from Transunion stating, "verified as accurate".

55.     Upon information and belief, Plaintiff did not receive any response from Equifax.

56.     Upon information and belief, Equifax and Transunion notified Extra of the Plaintiff's dispute regarding the Extra Accounts.

57.     Upon receipt of the dispute of Plaintiff's account information from Equifax and Transunion, Extra failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information on the consumer report of the Plaintiff with respect to the disputed Extra Accounts.

58.     Had Extra done a reasonable investigation of the Plaintiff's dispute, it would have been revealed to Extra that the Extra Accounts were not discharged in bankruptcy as they show an opened date after the chapter 7 bankruptcy was already discharged.

59.     Despite the dispute by the Plaintiff that the information on his consumer reports were inaccurate with respect to the Extra Accounts, Equifax and Transunion did not timely evaluate or consider any of the information, claims, or evidence of the Plaintiff and did not reasonably verify that the derogatory information concerning the Extra Accounts were inaccurate.

60.     Equifax and Transunion violated 15 U.S.C. § 1681i(a)(1)(A) by failing to conduct a reasonable investigation since they failed to delete or correct the disputed Extra Accounts within 30 days of receiving Plaintiff's dispute letter.

61.     Had Equifax and Transunion done a reasonable investigation of the Plaintiff's dispute, it would have been revealed to Equifax and Transunion that the Extra

Accounts were not discharged in Plaintiff's Chapter 7 Bankruptcy and should not be reported as such.

62.    Equifax and Transunion have been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors.

63.    Notwithstanding Plaintiff's efforts, Equifax and Transunion continue to publish and disseminate such inaccurate information to other third parties, persons, entities, and credit grantors, as evidenced by the inquiries on the Plaintiff's credit report in the form of hard and soft pulls.

64.    As a result of the Defendants' failure to comply with the FCRA, the Plaintiff suffered concrete harm in the form of loss of credit, loss of ability to benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denial.

### *Plaintiff's Damages*

65.    As a preliminary matter, Extra failed to update the Extra Accounts information to show that it was <u>not</u> discharged through Plaintiff's Chapter 7 Bankruptcy.

66.    Plaintiff's creditworthiness is lowered because Defendants reported the Extra Accounts as a discharged debt when they were actually not opened until after Plaintiff's Chapter 7 Bankruptcy.

67.    As an individual attempting to improve his credit score for future credit transactions, the Plaintiff was harmed because of Defendants' inaccurate reporting of Plaintiff's Chapter 7 Bankruptcy.

68.    Equifax and Transunion's consumer report failed to report the Extra Accounts accurately, and both Defendants failed to update the Extra Accounts appropriately, which causes severe damage to Plaintiff's creditworthiness and his financial wellbeing because the Equifax and Transunion's erroneous reporting effects Plaintiff's credit worthiness.

69.    Plaintiff's consumer credit file and consumer reports were reviewed by numerous other entities after the discharge of his bankruptcy; those entities viewed the erroneous information published by the Defendants.

70.    As a direct result of Defendants' inaccurate reporting and failure in investigating disputes, Plaintiff suffered damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

71.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, disturbance of sleep, reputational damage, humiliation, stress, anger, frustration, shock, invasion of Plaintiff's privacy, embarrassment, and anxiety.

## COUNT I

## VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

72.     Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

73.     Pursuant to 15 U.S.C. § 1681e(b), the FCRA requires CRAs, like Equifax and Transunion, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information.

74.     Equifax and Transunion negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy accounts after a consumer receives a Discharge Order.

75.     Equifax and Transunion received notice of Plaintiff's bankruptcy and discharge through public records, independent collection of consumer information directly obtained by Equifax and Transunion through sources of consumer information such as Lexis-Nexis, Equifax and Transunion's own files, and information provided by data furnishers, yet Equifax and Transunion misapplied that information.

76.     Equifax and Transunion's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who file Chapter 7 Bankruptcies and what account were included in bankruptcies.

77.    Equifax and Transunion's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

78.    Equifax and Transunion's unreasonable policies, procedures and/or algorithms consistently fail to identify and update consumer accounts accurately as required by 15 U.S.C. § 1681e(b).

79.    Equifax and Transunion know the information that it reports about consumers' bankruptcies is often inconsistent with public records and its own files.

80.    However, Equifax and Transunion failed to mark the Extra Accounts accurately and instead reported it inaccurately as a debt that was discharged in Plaintiff's Chapter 7 Bankruptcy.

81.    Equifax and Transunion's failure to maintain and employ reasonable procedures to assure the information it reports is accurate is particularly egregious because the Equifax and Transunion regularly and voluntarily search for consumer bankruptcy information to include in credit files.

82.    Equifax and Transunion knew or should have known that it is obligated, by the FCRA, to maintain and employ reasonable procedures to assure it reports maximally accurate consumer credit information.

83.    Equifax and Transunion knew or should have known that the effect of a Discharge Order in Chapter 7 Bankruptcy is to discharge only the statutorily

dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

84.    CRAs' obligations are established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported by well-established case law, and demonstrated in prior cases involving Equifax and Transunion.

85.    Therefore, Equifax and Transunion had ample notice of its obligations under the FCRA and its continued use of unreasonable procedures.

86.    If Equifax and Transunion contend that it did not have sufficient notice, Equifax and Transunion must justify its own failure to review and/or locate the substantial written materials that detail CRAs' duties and obligations under the FCRA, including when consumers file for Chapter 7 Bankruptcy.

87.    Equifax and Transunion regularly conducts voluntary public records searches with the intention of including bankruptcy information on the consumer reports it sells to other parties for a profit.

88.    When Equifax and Transunion received notice of Plaintiff's bankruptcy information, it had an obligation to ensure it reported Plaintiff's discharge and its effects with maximal accuracy.

89.    Unfortunately, Equifax and Transunion willfully and consciously breached its duties as a CRA and deprived Plaintiff of his right to a fair and accurate consumer report.

90.     Despite knowledge of their legal obligations, Equifax and Transunion violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer report.

91.     Equifax and Transunion knew or should have known the information it reported about the Extra Accounts were inaccurate.

92.     Equifax and Transunion violated 15 U.S.C. § 1681e(b) by failing to report accurate information when the Equifax and Transunion knew or should have known that the information Equifax and Transunion are reporting is inaccurate, and/or otherwise contradicted by information known by Equifax and Transunion, reported to Equifax and Transunion, and/or reasonably available to Equifax and Transunion.

93.     Equifax and Transunion's violations of 15 U.S.C. § 1681e(b) were willful.

94.     Alternatively, Equifax and Transunion's violations of 15 U.S.C. § 1681e(b) were negligent.

95.     Equifax and Transunion's inaccurate reporting damaged Plaintiff's creditworthiness.

96.     Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Equifax and Transunion for reporting Plaintiff's Extra accounts as included in Plaintiff's Chapter 7 Bankruptcy.

97.   Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

98.   Equifax and Transunion are a direct and proximate cause of Plaintiff's damages.

99.   Equifax and Transunion's actions are a substantial factor in Plaintiff's damages.

100.   Therefore, Equifax and Transunion are liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## COUNT II

## VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)

101.   Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

102.   Pursuant to 15 U.S.C. § 1681i(a)(1)(A), after receiving a notice of dispute from a consumer, a credit reporting agency is obligated to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the item from the file."

103.   Pursuant to 15 U.S.C. § 1681i(a)(5)(C), "[a] consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a

consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph."

104.   Equifax and Transunion violated 15 U.S.C. § 1681i(a) by failing to delete inaccurate information from Plaintiff's credit file after receiving actual notice of such inaccuracies and failing to conduct a reasonable reinvestigation.

105.   Equifax and Transunion failed to maintain policies and procedures to adequately respond to a dispute by a consumer regarding information contained in its reports.

106.   Plaintiff's dispute letters point out the issues with Equifax and Transunion's credit reports, which were erroneous because the Extra Accounts, were opened after Plaintiff's bankruptcy was previously discharged from his Chapter 7 Bankruptcy, yet the reports state that these accounts were discharged in bankruptcy.

107.   Equifax and Transunion negligently and/or willfully violated 15 U.S.C. § 1681i(a) by failing to conduct a reasonable investigation into the disputed information from Plaintiff's dispute letter and correcting the inaccurate information reported pertaining to the Extra Accounts.

108.   Equifax and Transunion's post-dispute credit reports still contain wrong information pertaining to the Extra Accounts.

109.   Equifax and Transunion's unreasonable policies and procedures causes them to routinely fail at conducting a reasonable investigation regarding the disputed information.

110.   Equifax and Transunion's unreasonable policies and procedures causes them to regularly report consumer information without verifying its accuracy even after receiving a dispute from a consumer.

111.   Equifax and Transunion know that in response to a dispute letter from a consumer, it must conduct a reasonable investigation into the dispute and must clarify any mistake or error made by it on any credit reports.

112.   Equifax and Transunion's failure to maintain and employ reasonable procedures to assure the maximum accuracy of consumers' post-bankruptcy accounts is particularly egregious because they regularly and voluntarily search for consumer bankruptcy information to include in credit files.

113.   Equifax and Transunion's inadequate procedures damaged Plaintiff's creditworthiness.

114.   Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Equifax and Transunion's failure to respond to his dispute letters and update the disputed tradelines.

115.    Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

116.    Equifax and Transunion's actions are a direct and proximate cause of the Plaintiff's damages.

117.    Equifax and Transunion's actions are a substantial factor in Plaintiff's damages.

118.    Therefore, Equifax and Transunion are liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq.*

## COUNT III

## VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2

119.    Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

120.    Pursuant to the FCRA, all persons who furnished information to reporting agencies must participate in re-investigations conducted by the agencies when consumers dispute the accuracy and completeness of information contained in a consumer credit report. *See* 15 U.S.C. § 1681s-2.

121.    Pursuant to the FCRA, a furnisher of disputed information is notified by the reporting agency when the agency receives a notice of dispute from a consumer such

as the Plaintiff. The furnisher must then conduct a timely investigation of the disputed information and review all relevant information provided by the agency. *See* 15 U.S.C. § 1681i(a)(2)(A).

122.   The results of the investigation must be reported to the agency and, if the investigation reveals that the original information is incomplete or inaccurate, the information from a furnisher such as the Defendant Extra must be reported to all other agencies which were supplied such information. *See* 15 U.S.C. § 1681s-2(a)(2).

123.   Upon information and belief, Equifax and Transunion notified Extra of the Plaintiff's dispute regarding the accounts.

124.   Upon receipt of the dispute of the account from the Plaintiff by the Equifax and Transunion, Extra failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information on the consumer report of the Plaintiff with respect to the disputed accounts.

125.   Extra violated 15 U.S.C. § 1681s-2 by:

   a.   failing to fully and properly investigate the dispute of the Plaintiff;

   b.   by failing to review all relevant information regarding the same; and

   c.   by failing to correctly report the results of an accurate investigation to the credit reporting agencies.

126.   As a result of the conduct, action and inaction of Extra, Plaintiff suffered damages for the loss of credit, loss of the ability to benefit from credit, a chilling effect

on future applications for credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denials.

127.   The conduct, action and inaction of Extra was willful, rendering them liable for actual, statutory and punitive damages in an amount to be determined by a jury pursuant to 15 U.S.C. § 1681n.

128.   Alternatively, the conduct, action and inaction of Extra was negligent, entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

129.   Extra's procedures damaged Plaintiff's creditworthiness.

130.   Extra's actions are a direct and proximate cause of Plaintiff's damages.

131.   Extra's actions are substantial factors in Plaintiff's damages.

132.   Therefore, Extra is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendant Transunion, LLC, Defendant Equifax Information Services, LLC and Defendant Extra Credit Union for the following:

(a)   Declaratory judgment that Defendant Equifax and Transunion violated the FCRA, 15 U.S.C. §§ 1681e(b) and 1681i(a);

(b)     Declaratory judgment that Defendant Extra Credit Union violated the FCRA, 15 U.S.C. § 1681s-2;

(c)     An award of actual damages against Defendant Equifax and Transunion pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(d)     An award of statutory damages against Defendants pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(e)     An award of punitive damages against Defendants, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

(f)     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2); and

(g)     Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

Dated: November 4, 2024                         Respectfully submitted,


                                                /s/ Yaakov Saks
                                                **Stein Saks, PLLC**

By:  Yaakov Saks
One University Plaza, Ste 620
Hackensack, NJ 07601
Phone: (201) 282-6500
Fax: (201)-282-6501
ysaks@steinsakslegal.com
*Counsel for Plaintiff*